1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**FILED & ENTERED**

**AUG 21 2017**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY RUST       DEPUTY CLERK**

# NOT FOR PUBLICATION

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA

## NORTHERN DIVISION

| | |
|---|---|
| In re: | Case No. 9:16-bk-10331-PC |
| LA CASA DE LA RAZA, INC., | Chapter 11 |
| | **MEMORANDUM DECISION** |
| | Date:   August 9, 2017 |
| | Time:   10:00 a.m. |
| | Place:  United States Bankruptcy Court |
| | Courtroom # 201 |
| Debtor. | 1415 State Street |
| | Santa Barbara, CA 93101 |

Before the court is a Motion for Sanctions Pursuant to Federal Rule of Civil Procedure

9011" ("Motion"), by which La Casa de la Raza, Inc. ("Debtor") seeks the imposition of

sanctions against MLG Leasing, Inc. ("MLG"), MLG's president, Tomas Castelo ("Castelo"),

and MLG's attorney of record, Anthony Fischer ("Fischer") pursuant to *FRBP* 9011.[1]  The court, having considered the pleadings, evidentiary record, and argument of counsel, will grant Debtor's Motion, in part, and deny the Motion, in part, based upon the following findings of fact and conclusions of law made pursuant to F.R.Civ.P. 52(a)(1), as incorporated into FRBP 7052 and applied to contested matters in bankruptcy cases.

## I.    STATEMENT OF FACTS

On February 23, 2016, Debtor filed its voluntary petition under chapter 11 of the Code in the above referenced case.  Debtor is a single asset real estate, as that term is defined in 11 U.S.C. § 101(51B).  Debtor's primary asset is the real property and improvements at 601 E. Montecito Street, Santa Barbara, CA ("Property").  The Property has a fair market value of $2,200,000.  The liens against the Property do not exceed $760,000.  MLG holds the first lien encumbering the Property which secures a debt of approximately $717,641.  The case essentially is a two-party dispute.  Debtor has sought to protect MLG's interest in the Property pending confirmation of a plan by compliance with 11 U.S.C. § 362(d)(3), a 65% equity cushion, and monthly adequate protection payments of $3,262.42 per month to MLG since September 2016. MLG wants to foreclose its lien on the Property, and has litigated aggressively to thwart Debtor's reorganization efforts and to secure possession of its collateral.

On October 21, 2016, Debtor filed a Chapter 11 Plan of Reorganization ("Plan") and Chapter 11 Disclosure Statement Describing the Chapter 11 Plan ("Disclosure Statement").[2] MLG did not object to Debtor's Disclosure Statement.  On December 8, 2016, an Order Granting Debtor's Motion for Approval of Debtor's Disclosure Statement as Containing Adequate

---

[1]  Unless otherwise indicated, all "Code," "chapter" and "section" references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1330.  "Rule" references are to the Federal Rules of Bankruptcy Procedure ("FRBP"), which make applicable certain Federal Rules of Civil Procedure ("F.R.Civ.P.").  "LBR" references are to the Local Bankruptcy Rules of the United States Bankruptcy Court for the Central District of California ("LBR").

[2]  Debtor's Disclosure Statement and Plan were filed within the deadline fixed by 11 U.S.C. § 362(d)(3), as extended by the court, for the filing a proposed plan or the commencement of adequate protection payments.  See 11 U.S.C. § 362(d)(3).

Information was entered in the case.  A hearing on confirmation of the Plan was set for February 15, 2017.

MLG filed two untimely objections to confirmation of Debtor's Plan: (1) a 13-page Objection to Plan by MLG Leasing, Inc., Secured Creditor [Dkt. # 151 filed February 2, 2017 (1 day late); and (2) a 26–page Objection to Plan by MLG Leasing, Inc., Secured Creditor [Dkt. # 157] filed February 12, 2017 (11 days late).  At the hearing, the court noted that MLG's two objections were untimely and unsupported by a declaration or other evidence.  But having considered MLG's untimely objections, the court determined that the Debtor's Plan met all statutory requirements for confirmation, except § 1129(a)(10).  The court continued the confirmation hearing to permit Debtor to either obtain the acceptance of a class of claims impaired under the plan, or to modify the Plan (and to the extent necessary, the Disclosure Statement) to satisfy § 1129(a)(10).  A hearing on confirmation was continued to July 5, 2017, with objections to confirmation due not later than June 9, 2017.

On May 5, 2017, Debtor filed its First Amended Chapter 11 Plan of Reorganization ("Amended Plan") and First Amended Disclosure Statement Describing the Chapter 11 Plan ("Amended Disclosure Statement").  On May 10, 2017, MLG filed and served a 191-page document entitled Initial Brief in Opposition to and in Response to Second Disclosure Statement ("Initial Brief") [Dkt. # 176].  Fischer, as attorney of record for MLG, prepared, signed and filed the Initial Brief in the case.  By letter dated May 18, 2017, Debtor served Fischer with a copy of the Motion and advised Fischer, pursuant to Rule 9011(c)(1)(A), that the Motion would be filed in the event, not later than 21 days from Fischer's receipt thereof, the Initial Brief had not been withdrawn.  When Fischer did not withdraw the Initial Brief, Debtor filed the Motion and set the matter for hearing on August 9, 2017.  On July 26, 2017, MLG filed its Opposition to Debtor's Motion for Rule 11 Sanctions ("Opposition"), to which Debtor replied on August 2, 2017.  After a hearing on August 9, 2017, the matter was continued to October 4, 2017, pending a decision on the merits.

## II. DISCUSSION

This court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 157(b) and 1334(b). Debtor's Motion seeking the imposition of sanctions under Rule 9011 is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (C), (L) and (O). Venue is appropriate in this court. 28 U.S.C. § 1409(a).

A. Standard Under Rule 9011.

Rule 9011(b) entitled **Representations to the Court**, states:

> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances, --
>
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonable based on lack of information or belief.

FRBP 9011(b). Rule 9011(c) further states that "[i]f, after notice and a reasonable opportunity to respond, the court determines that [Rule 9011(b)] has been violated, the court may . . . impose an appropriate sanction upon the attorneys, law firms, or parties that have violated [Rule 9011(b)] or are responsible for the violation. FRBP 9011(c).

"In determining whether sanctions are warranted under Rule 9011(b), we 'must consider both frivolousness <u>and</u> improper purpose on a sliding scale, where the more compelling the showing as to one element, the less decisive need be the showing as to the other.'" <u>Dressler v. The Seeley Co. (In re Silberkraus)</u>, 336 F.3d 864, 870 (9th Cir. 2003) (quoting <u>Marsch v. Marsch (In re Marsch)</u>, 36 F.3d 825, 830 (9th Cir. 1994) (emphasis in original)). In divining

4

frivolousness or improper purpose, "attorney conduct is measured objectively against a reasonableness standard, which consists of a competent attorney admitted to practice before the involved court." Valley Nat'l Bank of Ariz. v. Needler (In re Grantham Bros.), 922 F.2d 1438, 1441 (9th Cir. 1991) (citation omitted).

B.   Contentions of the Parties

Debtor claims that MLG's Initial Brief is frivolous and that it was filed for an improper purpose. According to Debtor, the offending paper "is actually a lightly edited version of the same brief improperly filed one hour before the recently held prove-up hearing in the related adversary proceeding."[3] Debtor further states:

> Not only was the Disclosure Statement already approved by this Court on December 8, 2016, without opposition from MLG, the brief has almost nothing to do with the Disclosure Statement. Instead it is really an opposition to the Motion for Default Judgment in the Adversary Proceeding containing wild speculation and allegations. The brief confusingly includes a one line request for judicial notice, a nunc pro tunc opposition to Debtor's Counsel's Application to be Employed as Bankruptcy Counsel, and a request for relief from the automatic stay so that MLG can make changes to the management of the property to allow for a refinance.[4]

MLG denies that the Initial Brief is frivolous or filed for an improper purpose, arguing that the Initial Brief "includes important information regarding the lengthy history of events involving the secured creditor, important information regarding the Debtor's source of legal advice in 2015, important information regarding the insider status of creditors, and important information regarding Debtor's failure to comply with single asset debtor rules."[5]

C.   MLG's Initial Brief is Legally and Factually Frivolous

---

[3] Motion, 2:8-10. On May 5, 2016, Debtor filed a complaint against MLG and Castelo in Adversary No. 9:16-ap-01040-PC, La Casa de la Raza, Inc. v. Tomas Castelo, et al. ("Adversary Proceeding"), seeking (a) damages for alleged fraud, breach of contract, breach of the covenant of good faith and fair dealing, unfair business practices, and intentional interference with a prospective economic advantage; (b) a declaratory judgment that MLG's deed of trust lien on the Property is void; and (c) injunctive relief. The adversary proceeding remained pending as to Castelo when the Initial Brief was filed on May 10, 2017.

[4] Id. at 9:4-11 (emphasis in original).

[5] Opposition, 6:24-28.

"A claim is frivolous if it is 'both baseless and made without a reasonable and competent inquiry.'" <u>Valley Nat'l Bank of Ariz.</u>, 922 F.2d at 1442 (citation omitted). "An attorney has a duty to conduct a reasonable factual investigation as well as to perform adequate legal research that confirms that his position is warranted by existing law (or by a good faith argument for a modification or extension of existing law)." <u>Winterton v. Humitech of N. Cal., LLC (In re Blue Pine Group, Inc.)</u>, 457 B.R. 64, 75 (9th Cir. BAP 2011), <u>aff'd in part, vacated in part</u>, 526 Fed. Appx. 768 (9th Cir. 2013). "[A] finding that there was no reasonable inquiry into either the facts or the law is tantamount to a finding of frivolousness." <u>Id.</u>  A frivolous or legally unreasonable motion violates Rule 9011 regardless of whether it was filed in good faith.  <u>See</u> <u>Smith v. Ricks</u>, 31 F.3d 1478, 1488 (9th Cir. 1994) ("[C]ounsel can no longer avoid the sting of Rule 11 sanctions by operating under the guise of a pure heart and empty head." (citation omitted)).

MLG's Initial Brief is both legally and factually groundless.  At the confirmation hearing on February 15, 2017, Debtor was instructed to file an amended Plan, and <u>to the extent necessary</u> an amended Disclosure Statement, to remedy the § 1129(a)(10) issue – the only remaining obstacle to confirmation.  With the exception of (1) updated information regarding the status of Adversary No. 9:16-ap-01040 and accrued administrative expenses; (2) disclosure of a tentative agreement for the sale of an interest in the Property to satisfy all allowed claims in full; and (3) the separate classification of the unsecured non-priority claim of the Internal Revenue Service calculated to satisfy § 1129(a)(10), the Amended Disclosure Statement is virtually <u>identical in substance</u> to Debtor's original Disclosure Statement approved by the court on December 8, 2016, to which MLG had no objection whatsoever.

Notwithstanding the court's approval of the original Disclosure Statement as containing adequate information sufficient to pass muster under § 1125(a), MLG filed the Initial Brief for the stated purpose of attacking "the claim that [the] disclosure statement contains the 'best information available to the Debtor' . . . .'"[6]  MLG did not object or challenge the information contained in Debtor's original disclosure statement when it had the opportunity to do so.  Nor

---

[6] Initial Brief, 2:1-2.

does the Initial Brief challenge as incomplete, incorrect or misleading any of the new

information added to the Amended Disclosure Statement.

MLG points to the Debtors' cash flow projections, claiming that the "Disclosure

Statement misrepresents the financial status of the Debtor."[7]  However, the cash flow projections

attached as Exhibit C to the Amended Disclosure Statement are <u>identical</u> to the cash flow

projections attached as Exhibit B to Debtor's original Disclosure Statement.

MLG falsely claims in its Initial Brief that "Debtor has no feasible or likely to be

approved plan pending and does not have a firm date for a hearing on any proposed plan."[8]  One

need only to look at the docket to confirm that Debtor (1) filed the Plan and Disclosure

Statement on October 21, 2016; (2) obtained approval of the Disclosure Statement on December

8, 2016; (3) proceeded to a confirmation hearing on February 15, 2017; and (4) filed the

Amended Plan and Amended Disclosure Statement on May 5, 2017, for which a continued

confirmation hearing had been set for July 5, 2017 – the date which appears on the face of

MLG's Initial Brief.[9]  Again, the only issue which necessitated the filing of the Amended Plan

and, <u>to the extent necessary</u>, an Amended Disclosure Statement, was the requirement that Debtor

satisfy § 1129(a)(10).

MLG repeatedly states in its Initial Brief that it is entitled to relief from the automatic

stay "because Debtor has not complied with the time limits and/or payments required under

---

[7] <u>Id.</u> at 8:17-20.

[8] <u>Id.</u> at 7:21-22.

[9] By order entered on June 5, 2017, the confirmation hearing was continued to August 9, 2017, due to the unavailability of Debtor's counsel for the hearing on July 5, 2017.  In the interim, Debtor filed a Motion for an Order Authorizing Debtor to Sell a Partial Interest in Real Property and to Make Disbursements to All Creditors and Administrative Claims [Dkt. # 185] on June 6, 2017.  MLG opposed the motion which was heard and granted by the court on June 28, 2017. On July 27, 2017, an Order Granting Debtor's Motion to Sell a Partial Interest in Real Property and to Make Disbursements to All Creditors and Administrative Claimants [Dkt. # 185] was entered in the case which authorized the Debtor to sell a partial interest in the Property for the sum of $1,100,000 cash and to pay all allowed administrative expenses and claims through a disbursement at close of escrow, including the undisputed portion of MLG's secured claim.

section 362(d)(3)."[10]  Not only is this assertion short of being a disclosure statement issue, it is

patently false as evidenced by the docket in this case.  Section 362(d)(3) states, in pertinent part,

that the court must lift the stay as to a single asset real estate unless the debtor, not later than 90

days after entry of the order for relief (or such later date as the court may determine for cause by

order entered within that 90-day period) –

    a.  files a plan that has a reasonable possibility of being confirmed within a reasonable
       period of time; or

    b.  commences monthly payments that are in an amount equal to the interest at the then
       applicable non-default contract rate of interest on the value of the creditor's interest in
       the collateral.

See 11 U.S.C. § 362(d)(3).  The subsections of § 362(d)(3) are written in the disjunctive – either

the Debtor must timely file a plan or commence adequate protection payments.  Id.  Debtor did

both in this case.

      Upon the commencement of this case, Debtor admitted that it was a single asset real

estate as defined by § 101(51B).  For purposes of § 362(d)(3) the 90th day from the petition date

in this case was May 23, 2016.  On April 22, 2016, Debtor moved for an extension of the 90-day

period for cause under § 362(d)(3).  After notice and a hearing on May 4, 2016, the court entered

an order extending the deadline under § 362(d)(3) to file a plan or make adequate protection

payments to July 23, 2016.  On July 12, 2016, Debtor filed an emergency motion for a second

extension of the deadline for cause under § 362(d)(3).  After notice and a hearing on July 21,

2016, the court granted the motion and extended the deadline under § 362(d)(3) to October 21,

2016.

      The most significant factor underlying the court's finding of "cause" for each of the

extensions was the undisputed fact that the Property had a fair market value of $2,200,000,

secured debt of only $759,641, and that MLG's interest in the Property was protected by an

---

[10]  Initial Brief, 23:13-14.  See also Initial Brief, 2:6-9 ("The Plaintiff/Debtor declared itself a
single asset Debtor more than one year ago in Doc 50.  It has yet to comply with single-asset
requirements to timely propose an approvable Plan or to make monthly payments in the amount
of the non-default interest rate on the value of the creditors interest in the property."); Initial
Brief, 17:18-19 ("The Creditor is entitled to relief from stay because the Debtor has not complied
with the time limits and/or payments required by section 362(d)(3).").

equity cushion in excess of $1,400,000.  On October 21, 2016, Debtor filed the Plan and

Disclosure Statement within the deadline as extended by the court.  The court approved Debtor's

Disclosure Statement on December 7, 2017, and set a hearing on confirmation for February 15,

2017.  In addition to the considerable equity cushion, MLG began receiving adequate protection

payments from the Debtor of $3,262.42 per month in September 2016, representing non-default

interest payments at 9.5%.  Despite the foregoing, MLG has persisted in pursuing the claim that

Debtor has not complied with the requirements of § 362(d)(3) though it is clear from the record

that the claim is meritless.[11]

     Finally, MLG's Initial Brief is strikingly similar to a 23-page document entitled Trial

Brief in Opposition to Motion for Default Judgment against Defendant Castelo [Dkt. # 111]

("Adversary Trial Brief") filed in the Adversary Proceeding on May 3, 2017.  By order entered

on November 3, 2016, as modified by order entered on December 8, 2016 , the court struck the

answer of Defendant, Tomas Castelo and entered his default in the Adversary Proceeding

pursuant to F.R.Civ.P. 37(b)(2) as a sanction for his failure to make disclosures or to cooperate in

discovery.  Castelo appealed the November 3rd order, but did not seek a stay pending appeal.  It

is well settled that the entry of default cuts-off the right of the defaulted defendant "to contest the

factual allegations of the complaint."  <u>Jules Jordan Video, Inc. v. 144942 Canada Inc.</u>, 617 F.3d

1146, 1159 (9th Cir. 2010).  Notwithstanding his default, Castelo improperly filed the Adversary

Trial Brief in the Adversary Proceeding on May 3, 2016 – one hour before an evidentiary

hearing set for May 3, 2016, regarding Debtor's motion for entry of a default judgment against

him solely with respect to its claims for damages.  Fischer, as the attorney of record for Castelo,

prepared, signed and filed the Adversary Trial Brief in the Adversary Proceeding.

---

[11]  On July 5, 2017, MLG filed a motion seeking relief from the automatic stay under §
362(d)(3).  Debtor filed written opposition to the motion on July 25, 2017, to which MLG replied
on August 2, 2017.  At the hearing on August 9, 2017, the court denied MLG's motion finding
not only that Debtor had complied with § 326(d)(3), but that MLG's interest in the Property, BY
ITS OWN ADMISSION, continued to be protected by a 65% equity cushion and monthly
adequate protection payments of $3,262.42.  An order denying the motion was entered on
August 9, 2017.

A side-by-side comparison of the Initial Brief and Adversary Trial Brief reveals that many of the allegations contained in the Initial Brief were simply "cut and pasted" from the Adversary Trial Brief without regard to whether such allegations bore any relevance to the issues before the court at the continued confirmation hearing on July 5, 2017. The court agrees in principle with the Debtor's observation that:

> There is no legal authority for or request to vacate the order approving the disclosure statement contained in the [Initial] Brief. There is no analysis of rules pertaining to the adequacy of the disclosure statement. The bulk of the brief is nearly identical to what MLG improperly filed in the adversary proceeding as an opposition to the motion for default judgment. The legal argument section of the brief only contains two headings which are issues raised in the adversary proceeding. First is the Plaintiff's ability to quiet title and second is the basis for invalidation of MLG's lien. There is not a single legal argument in the [Initial] Brief pertaining to the disclosure statement whatsoever or any prayer pertaining to the disclosure statement.[12]

MLG's Initial Brief is a rambling diatribe unsupported by a declaration or other properly authenticated evidence. No competent attorney admitted to practice before this court would have signed and filed such a document in opposition to an amended disclosure statement under similar circumstances. MLG filed and served its Initial Brief ostensibly to point out perceived deficiencies in Debtor's Amended Disclosure Statement, but its claims are legally and factually baseless and made without a reasonable and competent inquiry. Its factual claims lack evidentiary support and its legal arguments lack merit. It is devoid of any relevant or meritorious objection to the Debtor's Amended Disclosure Statement.

D.  MLG's Initial Brief Was Filed for an Improper Purpose

"The frivolous and improper purpose prongs of Rule [9011] overlap, and 'evidence bearing on frivolousness . . . will often be highly probative of purpose.'" Valley Nat'l Bank of Ariz., 922 F.2d at 1443 (citation omitted). Where there is no legal or factual basis for a claim, improper purpose may be inferred. See Huettig & Schromm, Inc. v. Landscape Contractors Council of N. Cal., 790 F.2d 1421, 1427 (9th Cir. 1986) ("Given the claimed expertise and experience of these attorneys, a strong inference arises that their bringing of an action such as this was for an improper purpose." (citation omitted)). "If a court finds that a motion or paper,

---

[12] Motion, 11:5-12.

other than a complaint, is filed in the context of a persistent pattern of clearly abusive litigation activity, it will be deemed to have been filed for an improper purpose and sanctionable. <u>Aetna Life Ins. Co. v. Alla Med. Servs., Inc.</u>, 855 F.2d 1470, 1476 (9th Cir. 1988); <u>see</u> <u>Robinson v. Lawrence (In re Lawrence)</u>, 494 B.R. 525, 533 (Bankr. E.D. Cal. 2013) ("An improper purpose is generally found where the evidence shows that the party against whom sanctions are sought has engaged in a pattern of abusive litigation for the purpose of delay or harassment.").

Fischer is MLG's attorney of record in this case. Fischer also represents Castelo in the Adversary Proceeding. Fischer has represented MLG and Castelo in this case since the petition date. Fischer is an experienced attorney. He was admitted to the State Bar of California on May 9, 1973, and has been a practicing attorney in this state for the past 44 years. Fischer signed the Initial Brief certifying that its factual contentions had evidentiary support, its legal contentions were warranted, and that it was not filed for an improper purpose.

Given Fischer's experience as an attorney, Fischer's dual representation of MLG and Castelo, the timing of MLG's Initial Brief, the manner in which it was prepared, and the fact that the claims with respect to Debtor's Amended Disclosure Statement are both legally and factually baseless and made without a reasonable and competent inquiry, the court concludes that MLG's Initial Brief was filed in bad faith by MLG and Fischer for the specific purpose of frustrating or impeding Debtor's efforts to confirm a plan and to needlessly increase the Debtor's attorneys' fees and expenses in this case.

E.  <u>Type and Amount of Sanctions</u>

Rule 9011(c) provides that "sanction[s] imposed for violation of this rule shall be limited to what is sufficient to deter repetition of such conduct or comparable conduct by others similarly situated," and that such sanctions may include "some or all of the reasonable attorneys' fees and other expenses incurred as a direct result of the violation." FRBP 9011(c)(2). The amount of sanctions must be consistent with the purpose of Rule 9011, which is to deter the filing of frivolous papers. <u>Hsu v. Intel Corp.</u>, 8 F.3d 27, *4 (9th Cir. 1993) (citing <u>Brown v. Baden (In re Yagman)</u>, 796 F.2d 1165, 1183 (9th Cir. 1986), <u>amended</u>, 803 F.2d 1085 (9th Cir. 1986), <u>cert. denied</u>, 484 U.S. 963 (1987)). "Monetary sanctions may not be awarded against a

represented party for a violation of Bankruptcy Rule 9011(b)(2)."  <u>Lawrence</u>, 494 B.R. at 531.

However, such sanctions may be awarded against a represented party for <u>factually</u> groundless

allegations in a pleading.  <u>See</u> <u>Marlin v. Moody Nat'l Bank</u>, 533 F.3d 374, 380 (5th Cir. 2008)

("While monetary sanctions are improper against a party for a violation of Rule 11(b)(2)

(requiring 'legal contentions [to be] warranted by existing law . . .'), they may be awarded

against a party when a court determines that factual contentions lacked evidentiary support.");

<u>Skidmore Energy, Inc. v. KPMG</u>, 455 F.3d 564, 568 (5th Cir. 2006).

Debtor seeks an award of reasonable attorneys' fees of $13,218.75 for 35.25 hours of

legal services, billed at an hourly rate of $375, incurred in presenting the Motion.  Debtor's

request for reasonable attorneys' fees is supported by time records attached as Exhibit C to the

Declaration of Eric Bensamochan in support of the Motion, and as Exhibit A to the Declaration

of Eric Bensamochan in support of the reply.  Debtor's request for attorneys' fees is summarized

as follows:

| Description | Total |
|---|---|
| Review Initial Brief and exhibits thereto (6.0 hrs.) | $2,250.00 |
| Research case law Rule 9011 & motions for sanctions, and other possible violations by Fischer (12.25 hrs.) | 4,593.75 |
| Draft sanctions motion; prepare and send safe harbor letter (11.0 hrs.) | 4,125.00 |
| Review Opposition (2.0 hrs.) | 750.00 |
| Research & draft Reply (4.0 hrs.) | 1,500.00 |
| Total | $13,218.75 |

The court takes judicial notice that the hourly rate of $375.00 charged by Debtor's

attorney is within the range of hourly rates charged by attorneys for similar legal services

rendered in chapter 11 cases pending in the United States Bankruptcy Court for the Central

District of California, Northern Division, and that such rate is reasonable.  There is no evidence

that Debtor has not taken appropriate action to mitigate the amount of attorneys' fees sought.

However, the attorneys' fees requested, in the court's view, exceed the amount that would have

12

been reasonably necessary to resist the offending action. MLG's Initial Brief was lengthy – 191 pages, but it took the court far less than six hours to review the Initial Brief to determine that it was baseless and made without reasonable inquiry. Moreover, Debtor's counsel is an experienced bankruptcy attorney. Given his level of competence, the court believes that a day and a half to research Rule 9011 before commencing preparation of the Motion and safe harbor letter is excessive. Two hours to review the 7-page Opposition, which was not supported by a declaration, exhibits or other papers, is excessive as well.

Accordingly, Debtor will be awarded as a monetary sanction against MLG and Fischer, jointly and severally, pursuant to Rule 9011(c)(1) reasonable attorneys' fees in the amount of $9,375.00, payable to Debtor's counsel, to compensate Debtor for the cost of the following legal services, rendered at a rate of $375 per hour, which the court finds were reasonably and necessarily incurred in presenting the Motion:

| Description | Total |
|---|---|
| Review Initial Brief and exhibits thereto (2.5 hrs.) | $ 937.50 |
| Research case law Rule 9011 & motions for sanctions, and other possible violations by Fischer (4.5 hrs.) | 1,687.50 |
| Draft sanctions motion; prepare and send safe harbor letter (11.0 hrs.) | 4,125.00 |
| Review Opposition (1.0 hrs.) | 375.00 |
| Research & draft Reply (4.0 hrs.) | 1,500.00 |
| Prepare for and attend the hearing on the Motion (2.0 hrs.) | 750.00 |
| Total | $9,375.00 |

The court further finds that such a sanction will effectively serve the overriding deterrent purpose of Rule 9011.[13]

---

[13] To the extent the Motion seeks the imposition of sanctions against Castelo under Rule 9011, the Motion is denied. MLG, not Castelo, was the party to the Initial Brief signed by Fischer which was the target of the Rule 9011 sanction and the document Fischer was asked to withdraw by letter dated May 18, 2017, pursuant to FRBP 9011(c)(1)(A). MLG, not Castelo, is the represented party on the Initial Brief and there is no evidence to the contrary.

III. <u>CONCLUSION</u>

For the reasons stated, the Motion will be granted, in part, and denied, in part.  Debtor will be awarded the sum of $9,375.00 against MLG and Fischer, jointly and severally, as a monetary sanction pursuant to Rule 9011(c)(1), payable to Debtor's attorney not later than 60 days after the date of entry of the order on the Motion.

A separate order will be entered consistent with this memorandum decision.

Date: August 21, 2017

Peter H. Carroll
United States Bankruptcy Judge